

**SO ORDERED.**
**SIGNED this 28th day of September, 2012**

_____
Shelley D. Rucker
**UNITED STATES BANKRUPTCY JUDGE**

**THIS ORDER HAS BEEN ENTERED ON THE DOCKET.**
**PLEASE SEE DOCKET FOR ENTRY DATE.**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

In re:                                              No. 11-14429
                                                    Chapter 7
RICARDO BLAIR and ZELMA
DARVILLE BLAIR,

         Debtor;


OAK STREET FUNDING, LLC

         Plaintiff,

v                                                   Adversary Proceeding
                                                    No. 12-1052


ZELMA DARVILLE BLAIR,

Defendant.

**MEMORANDUM**

Plaintiff Oak Street Funding, LLC ("Plaintiff" or "Oak Street") brings this adversary proceeding against the defendant debtor Zelma Blair ("Defendant" or "Debtor") alleging that the Debtor has committed fraud or defalcation and engaged in willful and malicious behavior sufficient to deny her a discharge of the debt owed to Plaintiff pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). [Doc. No. 1, Complaint].[1] The Debtor moves to dismiss the Plaintiff's Complaint on the pleadings pursuant to Fed. R. Civ. P. 12(c) or for failure to state a claim on which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), as applied to bankruptcy proceedings pursuant to Fed. R. Bankr. P. 7012. [Doc. No. 7]. The Plaintiff opposes the motion to dismiss. [Doc. No. 11]. The Debtor has filed a reply to the Plaintiff's opposition briefing. [Doc. No. 12]. The Plaintiff filed a sur-reply, and the Debtor has moved to strike the sur-reply as redundant. If the court considers the sur-reply, the Debtor has requested that the court treat its motion to dismiss as a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. [Doc. Nos. 13, 14].

The court has reviewed the briefing filed by the parties, the pleadings at issue, and the applicable law and makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. The court has determined that it will DENY the motion to dismiss as premature and that it will DENY the motion to strike.

### I.    Background

The Debtor and her husband, Ricardo Blair, filed their voluntary Chapter 7 petition for bankruptcy on August 15, 2011. [Bankr. Case No. 11-14429, Doc. No. 1]. The Plaintiff filed a claim in the amount of $46,257.66 on November 16, 2011. [Bankr. Case No. 11-14429, Claim No.

---

1 All docket entry citations refer to docket entries for Adversary Proceeding No. 12-1052, unless otherwise noted.

2-1]. The Plaintiff filed this adversary proceeding on June 5, 2012. [Doc. No. 1, Complaint].

In the Complaint the Plaintiff alleges that the Debtor owned and operated Insurance

Network, LLC, now known as Blair Network Insurance, LLC ("Agency"). *See* Complaint, p. 2, ¶

1. On June 27, 2006 the Debtor, acting on behalf of the Agency, executed a Term Loan Note

("Note") in the principal amount of $69,200. The Plaintiff attached a copy of the Note as Exhibit A

to the Complaint. [Doc. No. 1-1]. On the same day the Debtor also signed a credit agreement

("Credit Agreement") on behalf of the Agency to obtain a non-revolving credit facility in the

amount of $69,200 to be evidenced by the Note. A copy of the Credit Agreement is attached to the

Complaint as Exhibit B. [Doc. No. 1-2].

The Credit Agreement indicated that "[t]he funds derived by the Borrower from the

proceeds of the Term Loan shall be used for <u>expanding office with commercial sales staff</u>." *Id.* at ¶

1(c). It further provided that the Term Loan was to be a secured Loan. To that end, the Debtor

acting on behalf of Insurance Network, LLC, executed a Security Agreement, attached as Exhibit

C, on June 27, 2006, which granted the Plaintiff a security interest in:

> (i) all commissions and other amounts paid or payable to the Agency with respect
> to any insurance policies (the "Insurance Policies") associated with the Agency
> Agreements (collectively, the " Agency Agreements") and Producer Codes
> (collectively, the "Producer Codes") identified in Schedule A hereto, including
> without limitation, any insurance policy commissions due on or after the date
> hereof and all commissions due before the date hereof but received on or after the
> date hereof (collectively, the "Insurance Policy Commissions") relating to such
> Agency Agreements and Producer Codes; (ii) the Deposit Account; and (iii) all
> other business personal property of the Borrower of every kind and nature now
> existing or hereafter acquired . . . .

[Doc. No. 1-3, ("Security Agreement"), ¶ 2]. The collateral description continued and included all

goods, inventory, equipment, accounts, instruments, investment property, and general intangibles

in addition to other categories of collateral. *Id.* Schedule A listed several insurance companies,

3

including AIG Indemnity Insurance Company, Appalachian Insurance Company, Dairyland

Insurance Company, Infinity Insurance Company, Metropolitan Life Insurance Company, Safeco

Insurance Companies, Southern Pioneer P&C Insurance Company, and RPS. *Id.*

The Credit Agreement identified a specific bank account as the Deposit Account. It stated

that:

> [a]ll of the Insurance Policy Commissions shall be immediately deposited by AIG
> Indemnity Insurance Company or Borrower, as applicable, within two (2) Business
> Days of receipt of such funds by AIG Indemnity Insurance Company, Borrower or
> Oak Street, as applicable, into the Borrower's special demand deposit account
> maintained by the Borrower with JPMorgan Chase ("Deposit Account").

[Doc. No. 1-2, Credit Agreement, at ¶ 1(e)]. The Credit Agreement also limited the Debtor's

access to the funds in the Deposit Account. The Plaintiff could withdraw its payments from the

account without notice. Cash from the Deposit Account was only released to the Debtor if certain

conditions were met, one of which was that the Agency's annual commissions had to be greater

than $32,985. *Id.* The Agency, Insurance Network, LLC, agreed to "[s]ervice the Insurance

Policies and the insurance carriers in the ordinary course of its business and in a manner necessary

to preserve the Insurance Policies and the Insurance Policy Commissions." *Id.* at ¶ 4(a).

The Debtor, acting on behalf of the Agency, executed and delivered an account control

agreement ("Control Agreement") on June 27, 2006 in which JP Morgan Chase Bank ("Chase

Bank"), the depository bank, acknowledged Oak Street's security interest and agreed to follow

Oak Street's directions regarding disbursement of the funds in the Deposit Account. [Doc. No. 1-4,

Complaint, Exhibit D].

In addition to the Agency's execution of the Loan Documents on June 27, 2006, the Debtor

also executed a Continuing Guarantee ("Guarantee"). The Guarantee provided in part:

> To induce OAK STREET FUNDING, LLC, ("Oak Street"), whose address for

purpose of notice hereunder is 11555 N. Meridian St, Suite 390, Carmel, Indiana
46032 to make loans, extend or continue credit or some other benefit, to or for the
benefit of Insurance Network LLC, a Tennessee Limited Liability Company (the
"Borrower"), and because the undersigned <u>Zelma Blair</u> (the "Guarantor") has
determined that executing this Guarantee is in the Guarantor's interest and to such
Guarantor's financial benefit, the Guarantor absolutely and unconditionally
guarantees to Oak Street, as primary obligor and not merely as surety, that the
Obligations . . . of the Borrower will be paid when due, whether by acceleration or
otherwise. . . .

[Doc. No. 1-7, Complaint, Exhibit G]. The Debtor's obligation pursuant to the Guarantee was a

maximum of $69,200.   *Id.* The Guarantee defined "Obligations" as "all indebtedness, liabilities

and obligations of the Borrower to Oak Street, or any of Oak Street's subsidiaries, affiliates or

successors, of every type and description, whether now existing or hereafter arising, whether direct

or indirect, absolute or contingent, liquidated or unliquidated, due or to become due, . . . including,

without limitation, all indebtedness, liabilities and obligations,contingent or otherwise whether

now existing or hereafter arising, of the Borrower under a Credit Agreement of even date

herewith." *Id.*

On August 9, 2006 Oak Street perfected its security interest in the collateral by filing a

UCC financing statement ("Financing Statement") with the Tennessee Department of State. [Doc.

No. 1-8, Complaint, Ex. H].

On March 28, 2007 the Debtor, acting on behalf of the Agency, signed and delivered to

Oak Street an amendment to the loan documents which changed the bank account designated for

the deposit of the Insurance Policy Commissions from Chase Bank to First Indiana Bank. [Doc.

No. 1-5, Complaint, Exhibit E]. The Agency also entered into a Deposit Account Control

Agreement with First Indiana Bank which replaced the control agreement with Chase Bank. [Doc.

No. 1-6, Complaint, Exhibit F].

Following the parties' entry into the agreements described *supra*, according to Oak Street's

Complaint, the following events transpired that resulted in the filing of this adversary proceeding:

Pursuant to the Credit Agreement, the Agency agreed through the Debtor, among other things, that she would:

(a) Deposit Insurance Policy Commissions into the Deposit Account within two (2) business days of receipt of such funds . . .
(b) Not sell, transfer, dispose of, assign or otherwise encumber any of Borrower's assets and properties (including, without limitation, the Collateral) to anyone other than Oak Street. . . .
(c) Not request or re-direct any of the Collateral to any other party than Oak Street. . . .

In addition to the Deposit Account, the Debtor maintained a separate business account at Sun Trust Bank, account number ending in 0920 (the "Other Account").

Pursuant to paragraph 1(e) of the Credit Agreement, so long as the Agency met its annualized commission requirement ($32,985.00) and maintained funds in excess of $10,380.00, in the Deposit Account, Oak Street would take its monthly payment from the Deposit Account and "sweep back" the excess funds to the Other Account. . . .

After Oak Street funded the loan in the principal amount of $69,200.00, Insurance Policy Commissions and other funds were regularly deposited in the Deposit Account and swept-back to the Other Account.

On or about July 13, 2010, Oak Street informed the Debtor that the Agency was no longer eligible for the "sweep backs" as it was no longer meeting the annualized commission requirement or sweepback cap.

The Debtor, without the permission and knowledge of Oak Street, intentionally redirected Collateral from the Deposit Account to the Other Account. Specifically, certain Insurance Policy Commissions were deposited into the Other Account which should have been deposited in the Deposit Account.

For several months, Oak Street contacted the Debtor regarding the intentional redirection of the Insurance Policy Commissions from certain carriers – AIG Indemnity Insurance Company, Appalachian Insurance Company, Dairyland Insurance Company, Infinity Insurance Company, Metropolitan Life Insurance Company, Safeco Insurance Companies, Southern Pioneer P&C Insurance Company and RPS – away from the Deposit Account.

Oak Street reminded the Debtor of the representations and warranties she made to Oak Street regarding the Insurance Policy Commissions and demanded

that she redirect the Insurance Policy Commissions to the Deposit Account.

Upon information and belief, the Debtor has intentionally used the Insurance Policy Commissions to pay her rental payments and other personal expenses, to the detriment of Oak Street.

Moreover, on or about December 22, 2011 the Debtor filed Articles of Amendment to change the name of the Agency to Blair Network Insurance LLC – after Oak Street had initiated proceedings to domesticate in Tennessee a judgment against the Debtor and the Agency rendered by the Marion County, Indiana Circuit Court.

Despite Oak Street's demands, the Debtor has failed to redirect the Insurance Policy Commissions back to the Deposit Account.

The last deposit into the Deposit Account by a Carrier was made on or about July 23, 2010.

Complaint, ¶¶ 13-25. The Plaintiff alleges that the Agency and the Debtor are in default on the various agreements the Debtor signed due to the re-direction of the insurance commissions. As of the date of the Debtor's bankruptcy petition, the Agency was in default on its debts owed to Oak Street in the amount of $46,257.66.

The Plaintiff asserts a claim of nondischargeability pursuant to 11 U.S.C. § 523(a)(4) and claims that the Debtor owed a fiduciary duty to Oak Street to provide it with the insurance policy commissions. *See* Complaint, ¶ 32. It contends that the Debtor attempted to circumvent her obligations by re-directing the insurance commissions.

The Plaintiff also asserts a claim of willful and malicious behavior pursuant to 11 U.S.C. § 523(a)(6). It claims that "[t]he Debtor not only failed to preserve the Insurance Policy Commissions but took willful and affirmative steps to defraud Oak Street by misappropriating the Insurance Policy Commissions." Complaint, ¶ 45.

The Debtor's motion asserts that the Plaintiff has made contradictory statements about the basis of its claim. If such contradictory statements have been made, she argues that both

statements should be excluded. Next she contends that there has been no allegation of a trust

relationship, and therefore the Plaintiff's claim under 11 U.S.C. § 523(a)(4) should be dismissed.

In support of these contentions, the Debtor has attached several documents. These include: (1) an

affidavit from the Debtor in which she denies that any redirection of Insurance Policy

Commissions occurred; (2) some of the Agency's banking records pertaining to an account at

Suntrust Bank; and (3) Indiana state court pleadings and docketed records pertaining to a lawsuit

brought in Indiana state court by the Plaintiff seeking a judgment for amounts due under the Term

Note and Credit Agreement and injunctive relief requiring the Debtor to redirect commissions to

the Deposit Account.

In her motion to dismiss, the Debtor disputes many of the Plaintiff's allegations. She

asserts that Oak Street filed a lawsuit against the Agency as the obligor and against her as the

guarantor in Marion County, Indiana Superior Court on January 13, 2011 ("Indiana Lawsuit").

The Debtor filed a copy of the Marion County Circuit/Superior Court Complaint, Case No. 49D04

1101CC001705 ("Indiana Complaint") with her motion to dismiss. [Doc. No. 8-1]. She asserts that

the Indiana Lawsuit did not allege fraud or defalcation. She also attached the Plaintiff's motion for

summary ruling on its motion for summary judgment in the Indiana Lawsuit and the order granting

the motion for summary judgment. *See* [Doc. Nos. 8-2, 8-3, 8-4]. The motion for summary ruling

was supported by an affidavit of Kathy Yeary, the Director of Customer Service of the Plaintiff. In

her affidavit, Ms. Yeary stated that all of the conditions precedent to Oak Street's enforcement of

the loan documents against the Defendant had been performed, had occurred, or had been excused.

[Doc. No. 8-3, Ex. C]. Paragraph 7.c. of the Credit Agreement required that the Agency be given

notice of a "failure of the [Agency] to keep or comply with any provision of this [Credit]

Agreement. . ." [Doc. 1-2, Credit Agreement, ¶ 7.c]. One of the provisions of the Credit Agreement

prohibited the Agency from requesting or redirecting "any of the commissions associated with the

Producer Code(s) or Agent Code(s) indentified on Schedule A without the prior written approval

of Oak Street." [Doc. 1-2, Credit Agreement, ¶ 5.e.]. Upon the occurrence of a default, the Term

Note became due and payable without any additional notice. *Id*. at ¶ 7. Oak Street was entitled to

possession of its collateral upon default. The Security Agreement allowed the Insurance

Companies to be contacted by Oak Street, and it required the Agency to hold the Insurance Policy

Proceeds it received in trust after default. [Doc. 1-3, Security Agreement, ¶ 11].

The order granting the motion for summary judgment provided that a judgment was

entered in favor of Oak Street against the Agency and the Debtor, as the guarantor for the Agency,

in the amount of $43,596.49. [Doc. No. 8-4]. The order also provided that Oak Street had a right to

immediate possession of its collateral. *Id.* The order further required that all of the Carriers which

were defined as the companies listed on Schedule A to the Credit and Security Agreements were

directed to "redirect all Insurance Policy Commissions to Oak Street." [Doc. No. 8-4, Indiana

Summary Judgment Order, ¶ I].

Following entry of the judgment in the Indiana Lawsuit, on May 12, 2011, the Plaintiff

filed a Petition to Enforce Judgment in Circuit Court of Hamilton County, Tennessee. [Doc. No.

8-5]. The Debtor filed her petition for bankruptcy on August 15, 2011. [Bankr. Case No.

11-14429]. On March 22, 2012 Oak Street filed an Amended Petition to Enforce Foreign

Judgment in Circuit Court of Hamilton County, Tennessee against the Agency only. [Doc. No.

8-6]. The Debtor asserts that the Indiana Lawsuit and the Petitions to Enforce Judgment filed in

Hamilton County, Tennessee did not mention fraud or defalcation in any way. The court finds that

there was no use of the term *fraud* or *defalcation* in the Indiana pleadings. The Indiana lawsuit

appears to have been a collection action for failure to pay the Term Note. Nevertheless, the Debtor

9

argues that the Plaintiff is precluded from now characterizing her conduct as fraud or defalcation

based on precedent which bars a party from contradicting a position taken in prior litigation.

## II.      Standard of Review and Analysis

## A.      Judgment on the Pleadings

The court must first determine the standard of review to apply to the Debtor's motion.

Federal Rule of Civil Procedure 12(c) states that "[a]fter the pleadings are closed—but early

enough not to delay trial—a party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c).

Federal Rule of Civil Procedure 7(a) defines what a "pleading" is. Fed.R.Civ.P. 7(a). It states that:

> Only these pleadings are allowed:
> (1) a complaint;
> (2) an answer to a complaint;
> (3) an answer to a counterclaim designated as a counterclaim;
> (4) an answer to a crossclaim;
> (5) a third-party complaint;
> (6) an answer to a third-party complaint; and
> (7) if the court orders one, a reply to an answer.

Fed.R.Civ.P. 7(a). A motion to dismiss does not qualify as a "responsive pleading" for purposes of

Rule 12(c). *See e.g., Carbon Processing and Reclamation, LLC v. Valero Marketing and Supply

Co.*, No. 09-2127-STA-cgc, 2009 WL 2369298, at *2 (W.D. Tenn. July 30, 2009). A motion for

judgment on the pleadings filed prior to an answer is premature. *See Signature Combs, Inc. v.

United States*, 253 F.Supp.2d 1028, 1030 (W.D. Tenn. 2003). "Pleadings are deemed 'closed'

upon the filing of a complaint and answer, unless a counter-claim, cross-claim, or third-party claim

is interposed, in which case the filing of a reply, cross-claim, or third-party answer will mark the

close of the pleadings." *Id.* (citing 5A Charles A. Wright and Arthur R. Miller, *Federal Practice

and Procedure* § 1367 (2d ed. 1990)). Due to the fact that the Debtor has not yet filed her answer in

this proceeding, the court concludes that Federal Rule of Civil Procedure 12(c) does not apply.

**B.      Dismissal for Failure to State a Claim**

The Defendant seeks a dismissal of the Plaintiff's Complaint on the basis that the

Complaint fails to state a claim on which relief can be granted. The Plaintiff raises two claims—

one under 11 U.S.C. § 523(a)(4) for a debt for fraud and defalcation while acting in a fiduciary

capacity and another under 11 U.S.C. § 523(a)(6) for willful and malicious injury to another's

property. The Debtor did not address the willful and malicious injury claim in her motion, and

therefore, the court will deny the motion to dismiss the Complaint as to the § 523(a)(6) claim at

this time. The court will address the motion to dismiss the claim related to § 523(a)(4) since both

parties briefed the trust element of this claim.

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for

failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The Federal Rules

of Civil Procedure permit a motion to dismiss pursuant to Rule 12(b)(6) prior to the filing of an

answer. *See Signature Combs, Inc.*, 253 F.Supp.2d at 1030. However, Federal Rule of Civil

Procedure 12(d) provides that:

> If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are
> presented to and not excluded by the court, the motion must be treated as one for
> summary judgment under Rule 56. *All parties must be given a reasonable
> opportunity to present all the material that is pertinent to the motion.*

Fed. R. Civ. P. 12(d) (emphasis added).

As the Sixth Circuit has cautioned:

> [a]ssessment of the facial sufficiency of the complaint must ordinarily be
> undertaken without resort to matters outside the pleadings. If a court does consider
> material outside the pleadings, the motion to dismiss must be treated as a motion for
> summary judgment under Rule 56 and all parties must be given a reasonable
> opportunity to present all material pertinent to the motion. However, a court may
> consider "exhibits attached [to the complaint], public records, items appearing in
> the record of the case and exhibits attached to the defendant's motion to dismiss so
> long as they are referred to in the complaint and are central to the claims contained

therein," without converting the motion to one for summary judgment.

*Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (quoting *Bassett v.*

*National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Where a court chooses not

to consider materials beyond the plaintiff's pleadings, there is no need to convert the motion to a

motion for summary judgment. *See Pueschel v. United States*, 369 F.3d 345, 354 n.3 (4th Cir.

2004).

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a

court must "treat as true all of the well-pleaded allegations of the complaint." *Bower v. Federal*

*Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)).   In addition, a court must construe all allegations

in the light most favorable to the plaintiff.   *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson &*

*Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969

(2007).   The complaint "must contain either direct or inferential allegations respecting all the

material elements to sustain a recovery under some viable legal theory." *Allard v. Weitzman (In re*

*DeLorean Motor Co.)*, 991 F.2d 1236, 1240 (6th Cir. 1993) (quoting *Scheid v. Fanny Farmer*

*Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). In *Twombly* the Supreme Court emphasized

that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need
> detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his
> "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic
> recitation of the elements of a cause of action will not do, . . . Factual allegations
> must be enough to raise a right to relief above the speculative level, on the
> assumption that all the allegations in the complaint are true (even if doubtful in
> fact).

127 S.Ct. at 1964-65 (citations omitted). *See also, Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932 (1986) (noting that "[a]lthough for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation").

### 1.      Evidentiary rule excluding contradictory statements is not applicable.

In support of her motion to dismiss pursuant to Rule 12(b)(6), the Debtor has attached several pleadings and orders related to the Indiana Lawsuit and the Petitions to Enforce Judgment filed in Hamilton County, Tennessee. She contends that these pleadings show that the Plaintiff raised only a contractual claim in Indiana but now seeks to assert a fraud claim in this court. She further contends that the Indiana claims never accused her of redirecting any proceeds. It is the redirection and subsequent use of those proceeds that is the basis of the Plaintiff's allegations of defalcation in this court. To address the effect of this omission, the court must first determine whether it can consider these public records, which are not part of the pleadings in the context of a motion to dismiss.

In *Eggerson v. United States* the district court addressed whether court pleadings and orders constituted public records for purposes of Rule 12(b)(6):

> In ruling on a motion under Rule 12(b)(6), the court may supplement the facts alleged in the pleadings by considering facts susceptible to judicial notice under Fed.R.Evid. 201. The court may therefore look to matters of public record for purposes of ruling on a motion to dismiss without converting the motion into one for summary judgment. Matters of public record include records of other court actions. Dismissal under Rule 12(b)(6) is appropriate when a defendant raises former adjudication as an affirmative defense and it is clear from the face of the complaint, and from matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.

No. 1:05-cv-594, 2006 WL 1720252, at *3 (W.D. Mich. June 22, 2006). Therefore, the court may

consider the pleadings and records of other court proceedings in considering the Debtor's motion

to dismiss. However, the court notes that an affirmative defense raised by the Debtor must be clear

from the face of the complaint. *Id.*

In *BellSouth Telecommunications, Inc. v. Kentucky Public Serv. Com'n*, the district court

provided the following reasoning:

> Although *res judicata* is an affirmative defense, it may be raised in a motion to
> dismiss. *The propriety of such a motion is predicated on the complaint's clearly
> showing on its face that the affirmative defense is applicable.* Additionally, such a
> motion is appropriately granted when 'judicial notice of the court's own records
> establishes the defense and there are no disputed facts.' On a motion to dismiss, the
> court may take "judicial notice of another court's opinion not for the truth of the
> facts recited therein, but for the existence of the opinion." Looking to such opinions
> and other public records "does not result in a conversion of the motion to dismiss to
> a motion for summary judgment."

No. 3:08-33-DCR, 2008 WL 5173334, at *6 (E.D. Ky. Dec. 10, 2008) (emphasis added) (quoting

*Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008) and 18 CHARLES

ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 4405 (2008) and citing

*Platsis v. E.F. Hutton & Co., Inc.*, 946 F.2d 38, 42-43 (6th Cir. 1991) and 5B CHARLES ALAN

WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357

(2008)). In this case the Debtor has not raised res judicata or collateral estoppel per se. Nor does

the Debtor's motion or memorandum address Indiana law on either of those doctrines. Instead, she

asks the court to disregard certain allegations in the Complaint based on her contention that the

Plaintiff previously made assertions which contradict the allegations currently made in its

Complaint.

The Debtor cites the Plaintiff's failure to raise fraud in the Indiana Lawsuit as a reason to

bar the Plaintiff's raising of fraud and defalcation in this adversary proceeding. The Debtor alleges

that the Plaintiff cannot "contradict" her prior position, relying on *Baker v. Johnson*, No.

14

M2007-01992-COA-R3-CV, 2009 WL 167204, at *3 (Tenn. Ct. App. Jan. 23, 2009). The court

finds that the ruling in that case is inapplicable here. *Baker* involved mutually contradictory

statements by a party at different stages of the same litigation proceeding. *Id.* at *4. There, the

defendant affirmatively made one assertion in his answer to the plaintiff's complaint and then

contradicted it later in his deposition. *Id.* The facts in this case are not analogous to those in the

*Baker* case. Even if the Debtor's assertions are true, *i.e.*, that Plaintiff failed to raise fraud in the

prior Indiana Lawsuit in the documents provided to the court, silence on a subject is not the same

as a contradictory assertion by a party. The court does not find that the Plaintiff has taken

contradictory positions on whether the Debtor committed fraud and/or defalcation.

      **2.**       **Conversion of the motion to dismiss to a motion for summary judgment would be premature.**

The Debtor in her sur-reply also asked the court to treat the motion to dismiss as a motion

for summary judgment.

The court acknowledges that "[t]he Sixth Circuit has cautioned that conversion of Rule

12(b)(6) motions into summary judgment motions 'should be exercised with great caution and

attention to the parties' procedural rights.'" *Taylor v. Hillis*, No. 1:10-cv-94, 2011 WL 6341090, at

*4 (W.D. Mich. Nov. 28, 2011) (quoting *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 487

(6th Cir. 2009)).

The Debtor appears to suggest that the court should convert her motion to one for summary

judgment and that the Plaintiff had sufficient time to respond to such a motion. The court disagrees

that the Plaintiff has had sufficient procedural notification of a conversion to summary judgment.

In addition, it appears that the Plaintiff is requesting some discovery time prior to conversion to a

motion for summary judgment. *See* [Doc. No. 11, Plaintiff's Objection to Defendant's Rule 12

Motion to Dismiss, p. 4 n. 11]; *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). The Sixth

Circuit noted that "[b]efore a district court can make this conversion [from motion to dismiss to

motion for summary judgment], it must give the 'parties . . . [a] reasonable opportunity to present

all material made pertinent to' the issue, which requires sufficient notice and an opportunity for

further discovery." *Friends of Tims Ford v. Tennessee Valley Authority*, 585 F.3d 955, 965 (6th Cir.

2009) (quotation omitted).

Further, other courts in this Circuit have cautioned against converting a motion to dismiss

too hastily. For example, in *Hearn v. County of Wayne*, the district court noted:

> . . . a motion to dismiss under Rule 12(b)(6) is confined to a consideration of the
> pleadings. "[A] court may accept 'matters outside the pleadings,' but in doing so it
> generally must treat the motion 'as one for summary judgment under Rule 56.'
> Rule 12 also provides that before accepting extraneous evidence and converting a
> motion to dismiss into one for summary judgment, "[a]ll parties must be given a
> reasonable opportunity to present all the material that is pertinent to the motion."
> The Court believes that converting the present motion into one for summary
> judgment would be unwise because the parties have not commenced discovery and
> have not had a reasonable opportunity to obtain, much less present, all the material
> that may be pertinent to the defendants' motion. A court should not rush to
> summary judgment before a party has an opportunity to engage in discovery.

No. 11-15221, 2012 WL 831502, at *2 (E.D. Mich. Mar. 12, 2012) (citing *Jones v. City of*

*Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) and *Alspaugh v. McConnell*, 643 F.3d 162, 168 (6th

Cir. 2011)).

Based on the volume of materials provided by the Debtor and the arguments of the

Plaintiff, the court will not convert the Debtor's motion to one for summary judgment and will

therefore consider her motion as one to dismiss pursuant to Rule 12(b)(6). As such, the court

declines to consider the records attached to the motion and briefing beyond the public records

relating to the Indiana Lawsuit and the Petitions to Enforce Judgment in Hamilton County,

Tennessee. Even considering these documents, the court concludes that there are too many issues

of fact that the Debtor raises that will need to be explored through discovery and further briefing.

Thus, a dismissal at this time, prior to discovery and more thorough briefing on summary

judgment, would be premature.

> **3.      The Plaintiff has stated a claim under 11 U.S.C. § 523(a)(4).**

The claim of defalcation while acting in a fiduciary capacity requires an allegation of the

existence of a trust. The Sixth Circuit requires more than facts which might justify the imposition

of an equitable trust to find defalcation. *See e.g., Board of Trustees v. Bucci (In re Bucci)*, 493 F.3d

635, 639-640 (6th Cir. 2007). It requires that an express or technical trust exist. *Id.* Tennessee law

requires the intent to create a trust, an identifiable trust res, and a beneficiary. *See*

*Kopsombut-Myint Buddhist Center v. State Board of Equalization*, 728 S.W.2d 327, 333 (Tenn.

Ct. App. 1987).

In this case, the Plaintiff has not alleged the existence of an express trust prior to a default.

The only reference to an obligation to hold in trust is found in the Security Agreement in a

paragraph imposing a trust duty on the Agency to hold Insurance Policy Commissions in trust after

a default. [Doc. No. 1-3, Security Agreement at 4, ¶ 11]. However, the Plaintiff has alleged that the

terms of the arrangement between the parties involved more than just an obligation to repay. The

Complaint alleges that the Agency failed to meet the minimum annualized sale commissions and

that the Plaintiff terminated the Agency's right to "sweepback" excess cash after the payment was

made. [Doc. No. 1, Complaint at ¶ 17]. The Credit Agreement attached to the Complaint prohibits

the redirection of any commissions from the companies listed on Schedule A. Credit Agreement, ¶

5(e). The Complaint alleges that the Debtor redirected the commissions. Complaint, ¶ 19. It alleges

that the re-direction was a default. *Id*. at ¶ 25. It further alleges that the Debtor failed to re-direct the

commissions to the Deposit Account and that she used the money for the Agency's rent and her

personal expenses. *Id*. at ¶¶ 23 and 21. As the court has noted above, the Plaintiff has alleged that there were restrictions on the use of the Insurance Policy Commissions. Those commissions were to be segregated in the Deposit Account for the benefit of Plaintiff and were available to the Agency only after certain conditions were met. In the Debtor's response she does not contend that these restrictions were ever waived, only that her use of the Other Account was not "redirection" of the commissions because the Plaintiff could have accessed the Other Account.

Based on a review of these allegations, the loan documents attached to the Complaint, and the Debtor's response, the court finds that the Plaintiff has alleged sufficient facts for the court to draw an inference that the parties may have had more than just a creditor-debtor relationship at the time the commissions were deposited into the Other Account following the notification by the Plaintiff that the sweepback was no longer available.

Therefore, the court will DENY the Debtor's motion to dismiss and will ORDER the Debtor to file an answer so that the parties may proceed with conducting discovery and setting a schedule for trial and dispositive motions.

### III.    Conclusion

As explained *supra*, the Debtor's motion is not a proper Rule 12(c) motion. The court further declines to convert the Debtor's Rule 12(b)(6) motion to a motion for summary judgment pursuant to Rule 56. The court will DENY the Debtor's Rule 12(b)(6) motion to dismiss for failure to state a claim. The court will ORDER the Debtor to file an answer so that the parties may proceed with discovery. The court will further DENY the Debtor's motion to strike.

A separate order will enter.

# # #