**SIGNED this 26th day of July, 2013**

_____
Shelley D. Rucker
UNITED STATES BANKRUPTCY JUDGE

_____


UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION


| | |
|---|---|
| In re: | No. 11-14429 |
| | Chapter 7 |
| RICARDO BLAIR and ZELMA DARVILLE BLAIR, | |
| Debtor; | |
| | |
| OAK STREET FUNDING, LLC | |
| Plaintiff, | |
| v | Adversary Proceeding No. 12-1052 |
| ZELMA DARVILLE BLAIR, | |
| Defendant. | |

**MEMORANDUM**

Plaintiff Oak Street Funding, LLC ("Plaintiff" or "Oak Street") brought this adversary proceeding against the defendant debtor Zelma Blair ("Defendant" or "Debtor") alleging that the

1

Debtor committed fraud or defalcation and engaged in willful and malicious behavior sufficient to deny her a discharge of the debt owed to Plaintiff pursuant to 11 U.S.C. §§ 523(a)(4) and 523(a)(6). [Doc. No. 1, Complaint]. The Plaintiff moved for summary judgment on these claims pursuant to Fed. R. Civ. P. 56, incorporated into adversary proceedings by Fed. R. Bankr. P. 7056. [Doc. No. 41]. The Defendant failed to file an opposition to the motion for summary judgment.

On May 17, 2013 this court issued an opinion and order granting the Plaintiff's motion for summary judgment in part. [Doc. Nos. 44, 45]. The court concluded that there was no genuine issue of material fact that the Debtor's debt owed to the Plaintiff for certain redirected insurance policy commissions ("Insurance Policy Commissions") is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). The court further concluded that there was no genuine issue of material fact that the Plaintiff is entitled to an award of attorneys' fees in an amount to be determined at a later hearing.

The court held a hearing on the amount of redirected Insurance Policy Commissions and attorneys' fees on July 25, 2013. [Doc. No. 52]. The attorney for Plaintiff and the Debtor appeared. The court received evidence pertaining to both the amount of redirected commissions and the amount of attorneys' fees accumulated in the case. The Debtor appeared at the hearing and contested certain deposits were the collateral of Plaintiff.

 **I.** **Background and Analysis**

 **A.** **Amount of Redirected Insurance Policy Commissions**

The court has summarized the background facts relating to this adversary proceeding in its memorandum granting Plaintiff's summary judgment in part. *See* [Doc. No. 44]. Therefore, the court will not attempt to re-summarize those facts here. In its prior memorandum the court

found that on June 27, 2006 the Debtor, acting on behalf of the Agency, executed a Term Loan Note ("Note") in the principal amount of $69,200 and entered into various agreements with the Plaintiff, including a security agreement and a credit agreement (collectively "Loan Documents"). The agreements required the Debtor to deposit the relevant Insurance Policy Commissions into a specially-designated deposit account ("Deposit Account") from which the Plaintiff could obtain "sweepbacks." The court concluded that the Debtor had willfully and maliciously diverted funds from the Deposit Account to her own personal SunTrust checking account. The court found that the Plaintiff had sustained its burden of proof that such willful and malicious behavior made a certain amount of the Debtor's debt to Plaintiff non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). The court reserved the amount of the non-dischargeable debt to be determined upon a hearing on damages.

At the hearing on damages, the Plaintiff presented the court with two exhibits pertaining to the amount of Insurance Policy Commissions that were diverted from the Deposit Account to the Debtor's SunTrust Account.

Hearing Exhibit 1 is a summary of deposits of Insurance Policy Commissions into the Debtor's SunTrust bank account from August of 2010 to November of 2011, as well as amounts of income stated on Insurance Network, LLC's 2011 Form 1099-MISCs representing miscellaneous income received from insurance policy commissions reported to the Internal Revenue Service. Hearing Ex. 1. Hearing Exhibit 2 contains copies of the SunTrust account records of deposits from August of 2010 to November of 2011 and copies of the 2011 Form 1099-MISCs on which the Plaintiff relies for the summary provided in Hearing Exhibit 1. Hearing Ex. 2. The Plaintiff totaled $53,916.76 in Insurance Policy Commissions that should have been deposited into the Deposit Account, but which were instead deposited into the

SunTrust account. *Id.* The Debtor objected to two amounts listed on Hearing Exhibit 1, an amount of $2,675.03 that the Plaintiff contends was deposited from Johnson & Johnson Insurance in January of 2011 and a Humana Insurance deposit in the amount of $352.00. The Debtor objected to the $2,675.03 amount because she claims that it was an amount that she paid to Johnson & Johnson Insurance, not an amount that she *received* in the form of a deposit. The Debtor objected to the $352.00 amount because she claims that the commission was owed to her ex-husband, Ricardo Blair, and not her. The Debtor did not object to any other amounts of redirected Insurance Policy Commissions presented and summarized by the Plaintiff.

In reviewing the SunTrust bank records, the court finds that it appears that the $2,675.03 amount was an amount that was deposited into the Debtor's SunTrust account on January 10, 2011. *See* Hearing Ex. 2, p. 12. However, even giving the Debtor the benefit of any doubt regarding her two objections, the Plaintiff has demonstrated more than enough total amounts of redirected Insurance Policy Commissions to demonstrate the maximum amount of $46,257.66 for which this court previously ruled the Plaintiff could obtain a non-dischargeable judgment. Therefore, the court concludes that it will award the Plaintiff a non-dischargeable judgment in the amount of $46,257.66 based on the proof supplied in Hearing Exhibits 1 and 2.

  **B. Amount of Non-Dischargeable Attorneys' Fees**

The Plaintiff further seeks its attorneys' fees and costs relating to its claims. As noted in the memorandum granting the Plaintiff's motion for summary judgment in part, the Credit Agreement provides that:

> The Borrower shall reimburse Oak Street for all costs and expenses, including reasonable attorneys' fees, incurred by Oak Street in the collection of the Term Loan as well as all other obligations and liabilities of the Borrower to Oak Street as a result of the occurrence of an Event of Default hereunder or in pursuit of any remedy of Oak Street available to it under or pursuant to this Agreement or any of the other Loan Documents.

4

[Doc. No. 41-4, Ex. 4, Credit Agreement, p. 10, ¶ 8]. The security agreement also provides for the payment of attorneys' fees: "The Agency shall pay to Oak Street on demand any and all expenses, including reasonable attorneys' fees and disbursements, incurred or paid by Oak Street in protecting, preserving or enforcing Oak Street's rights under or in respect of any of the Obligations or any of the Collateral." [Doc. No. 41-5, Ex. 5, Security Agreement, p. 8, ¶ 20]. The Note also states that "[a]ll amounts payable by Maker to Oak Street under this Note shall be without relief from valuation and appraisement laws and with attorneys' fees and costs of collection." [Doc. No. 41-3, Ex. 3, Note, p. 2]. A continuing guarantee also provides that the Debtor would pay "reasonable attorneys' fees" "suffered or incurred" by the Plaintiff in enforcing the personal guarantee. [Doc. No. 41-9, Ex. 9, Continuing Guarantee, p. 4].

As the United States Supreme Court has noted, "under the terms of the current Bankruptcy Code, it remains true that an otherwise enforceable contract allocating attorney's fees (*i.e.*, one that is enforceable under substantive, nonbankruptcy law) is allowable in bankruptcy except where the Bankruptcy Code provides otherwise." *Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co.*, 549 U.S. 443, 127 S.Ct. 1199, 1204 (2007) (citing 4 Collier on Bankruptcy ¶ 506.04[3][a], p. 506-118 (rev. 15th ed. 2006)). In *Travelers Casualty* the Supreme Court determined that "[t]his case requires us to consider whether the Bankruptcy Code disallows contract-based claims for attorneys' fees based solely on the fact that the fees at issue were incurred litigating issues of bankruptcy law. We conclude that it does not." *Id.* at 1204. In *Martin v. Bank of Germantown (In re Martin)*, the Sixth Circuit noted that "creditors are entitled to recover attorney's fees in bankruptcy claims if they have a contractual right to them valid under state law, which appears to be the case here, as the note itself provided that the Martins would reimburse the Bank for the costs and attorney's fees necessary to collect

5

the note. . . . Tennessee state law enforces such contractual obligations for reasonable attorney's fees." 761 F.2d 1163, 1168 (6th Cir. 1985), *overruled on other grounds by Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *see also, Synergeering Group, LLC v. Jonatzke (In re Jonatzke)*, 478 B.R. 846, 869-870 (Bankr. E.D. Mich. 2012). In addition, the Sixth Circuit noted, "a contractual right to attorney's fees is part of the debt to the creditor . . ." 761 F.2d at 1168. The Court further concluded that "[w]e do not think that section 523(d) prevents the award of attorney's fees and costs to creditors so entitled as a matter of contract under state law." *Id.*

Here, the Plaintiff can demonstrate several agreements pursuant to which the Debtor agreed to pay attorneys' fees incurred by Plaintiff in trying to enforce the obligations under the various Loan Documents. As the Sixth Circuit explained in *In re Martin*, if the creditor has a "contractual right, it must be assumed they gave value for that right at the time credit was advanced." 761 F.2d at 1168.

The Plaintiff has provided evidence in Hearing Exhibit 3 that it has incurred a total of $34,726.90 through the date of July 9, 2013 in attorneys' fees and costs to enforce its rights under the Loan Documents. Hearing Ex. 3. It also appears to the court that had the Debtor not diverted the commissions, the debt would have been substantially reduced or paid in full. The period for which fees are requested does not begin until August of 2011. The Debtor did not object to the fees and costs on any grounds, including reasonableness of the hourly rates. The court does not find the attorneys' hourly rates to be unreasonable as a matter of law. However, it appears that there is also a credit amount of $4,895.53 that has not been deducted from the total amount of fees and costs. *See id.* at 14. Therefore, that court concludes that the Plaintiff is entitled to a non-dischargeable judgment in the amount of $29,831.37 for attorneys' fees and

6

costs incurred in enforcing its rights under the Loan Documents.

**II.     Conclusion**

The court concludes that the Plaintiff is entitled a non-dischargeable judgment of $46,257.66 for the redirected Insurance Policy Commissions from the Deposit Account to the Debtor's SunTrust account. The court further concludes that the Plaintiff is entitled to a non-dischargeable judgment in the amount of $29,831.37 for attorneys' fees and costs incurred in enforcing its rights under the various agreements with the Debtor.

A separate order will enter.

# # #